IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MARKEY V. MARKEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFFREY MARKEY, APPELLEE,

V.

CODI MARKEY, NOW KNOWN AS CODI SLAMA, APPELLANT.

Filed December 26, 2017.    No. A-16-1148.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

David P. Kyker for appellant.

Terrance A. Poppe and Andrew K. Joyce, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Codi Markey, now known as Codi Slama, appeals from an order of the district court for Lancaster County which denied her request to modify a provision in the parties' dissolution decree regarding what school their minor child can attend and granted in part Jeffrey Markey's counterclaim to modify custody. Based on the reasons that follow, we affirm.

## BACKGROUND

Codi and Jeffrey are the parents of Caleb, born in November 2009. The parties were divorced by way of a decree on May 22, 2012. The decree incorporated a parenting plan agreed to by the parties, which awarded joint legal custody to the parties and physical custody to Codi. The parenting plan contained a provision which provided that Caleb would attend school at either Crete

- 1 -

Public School or Lincoln Public Schools unless otherwise mutually agreed upon by the parties. At that time, Codi was living in Crete, Nebraska, and Jeffrey was living in Lincoln, Nebraska.

Since that time, Codi has remarried and moved to Friend, Nebraska. She and her husband, Charles Slama bought a home there and had lived in Friend for 2½ years at the time of trial. They moved to Friend because it was closer to where she and Charles worked. Their home is four or five blocks from the school.

Codi and Charles have two children together, who were 2 years old and 2 months old at the time of trial. Charles has a child from a previous relationship, who was 6 years old at the time of trial. Charles has parenting time with her on a regular basis. The children all treat each other as brothers and sisters and are protective of each other.

On August 14, 2015, Codi filed a complaint for modification asking to change the school provision in the decree such that it would allow Caleb to attend school in Friend. On December 17, Jeffrey filed a responsive pleading and counterclaim in which he sought sole custody of Caleb. Trial was held in May 2016.

In regard to Codi's request to modify the school provision, the evidence showed that Caleb attended prekindergarten in Friend, and attended kindergarten in Crete. During Caleb's kindergarten year, Codi had to be at work by 6 a.m. so Codi's husband, Charles, got Caleb ready for school and then took him to his mother's house, which is in Dorchester, Nebraska, between Friend and Crete. Charles' mother would then transport Caleb to school in Crete. At the time of trial, Caleb had just completed his kindergarten year.

Jeffrey opposed Caleb attending school in Friend because of the additional distance between Lincoln, where he continued to live, and Friend versus Lincoln and Crete, and the lack of security at the school in Friend. He testified that it takes him 50 minutes to drive from his home in Lincoln to Friend, and 27 minutes to drive from his home to the school in Crete. The distance between Friend and Crete is 18 miles. He did not elaborate on his concern about the security at the Friend school.

Codi argued that Caleb would have less time in the car every day if he attended school in Friend because he will not be going to Crete from Friend every morning and back again, but rather will be only several blocks from school when he is with Codi. Caleb's siblings will also eventually go to school in Friend. Codi further testified that Caleb knows the teachers and the staff at the Friend school. He also has a lot of friends in the neighborhood and that he has played T-ball with kids who attend school in Friend.

Codi also testified that when Caleb attended prekindergarten at Friend school, the staff was attentive to his needs as a result of his cystic fibrosis and she never had any concerns about the care he received. The school also had a full-time nurse.

Codi stated that when she stipulated to the schools Caleb could attend, she did not know that she would be moving to Friend. She further testified that she has no intention of moving from Friend.

In regard to Jeffrey's request to modify custody, the parenting plan in place provided that during the school year, Jeffrey was to have parenting time every other weekend from Friday afternoon to Tuesday morning, and Thursday afternoon to Friday afternoon on the alternating weeks. However, for the past several years, the parties had been exercising an arrangement where Jeffrey had parenting time every other weekend from Thursday afternoon to Tuesday morning.

This resulted in Codi having nine overnights with Caleb and Jeffrey having five overnights with Caleb in a 14-day cycle. Codi testified that she wanted to continue this parenting arrangement.

Jeffrey sought sole physical custody because he had concerns about Caleb's daily care, specifically that Caleb was not getting his full morning treatment regimen for his cystic fibrosis. Caleb's cystic fibrosis requires a treatment regimen every morning and evening. He has to do a "Smart Vest" treatment, in which he wears a vest that vibrates to help loosen the mucus from his lungs. The vest has two preset programs to choose from, one that lasts for 21 minutes and one that lasts for 30 minutes. He also uses a breathing machine in which he is administered either a medicine called Pulmozyme or saline. Caleb also takes two inhalers, as well as antacids and enzymes. His doctors also recommend that he perform a "huff coughing" exercise to help clear the mucus from his lungs.

Caleb's diet primarily consists of a "Boost" drink. He is also administered additional calories at night through a gastrostomy tube. Caleb also takes vitamins and allergy medication. The purpose of the treatment regimen is to prevent infection and scarring in the lungs. With the exception of the daily treatment regimens, Caleb functions like any other child his age. He does not have any activity restrictions.

Codi's work hours are from 6 a.m. to 2 p.m. She was working in Friend but the facility she worked at closed a couple weeks before trial. At the time of trial, she was working the same hours, but at a job in Crete. Due to Codi's hours of employment, she relied on Charles to administer Caleb's morning treatment regimen, in addition to getting him to school. Charles had been administering Caleb's morning treatment regimen for about a year at the time of the modification trial.

Jeffrey testified that for several months he tracked the time that Caleb's Smart Vest was being used with a timing device located on the vest. Jeffrey alleged that based on the timing device, Caleb was not getting the full amount of treatment on a regular basis. He also noticed that one of Caleb's inhalers was lasting longer than it should have if it was given as prescribed. He was also concerned that Charles does not have Caleb do "huff coughing" in the morning. Further, he was concerned about a period of time that Codi was without Pulmozyme, the medicine used in the breathing machine.

Codi testified that Jeffrey did not raise any concerns to her about the Smart Vest treatments during the time he was monitoring its use. She and Charles both testified that they did not know about the timer on the vest or how it works.

Codi testified that the medical professionals at the cystic fibrosis clinic at Children's Hospital in Omaha have told her that ideally Caleb should have the 30-minute Smart Vest treatment twice a day, but the shorter 21-minute treatment is fine as long as he is getting the treatment regularly. She also testified that there was a period of time that she could not get Pulmozyme. She contacted the cystic fibrosis clinic and was told she could use saline instead. Codi testified that she has always followed the recommendations of the clinic and if she has any questions about Caleb's treatment, she consults the clinic. Caleb also goes to the clinic for a check-up every 3 months.

Codi testified that Charles has Caleb do the 30-minute treatment 85 percent of the time, but in her deposition she indicated that he usually does the 21-minute treatment. Charles testified

that he usually has Caleb do the 30-minute Smart Vest treatment, but sometimes he does the 21-minute treatment.

Codi testified that Charles does not have Caleb do the huff coughing in the morning. She later clarified that although the huff coughing is not done as part of the morning routine, she has Caleb do it at random times during the day.

Following trial, the trial court entered an order on September 15, 2016. The court denied Codi's request to modify the school provision to allow Caleb to attend school in Friend. In regard to Jeffrey's request to modify physical custody, the court did not grant him sole custody but found that a material change in circumstances existed to warrant a modification in physical custody. The court ordered that the parties should have joint physical custody, alternating every 7 days with each parent.

Codi filed a motion to alter or amend and a motion for new trial. The trial court denied both motions and this appeal followed.

## ASSIGNMENTS OF ERROR

Codi assigns that the trial court erred in (1) denying her request to permit Caleb to attend school in Friend, and (2) finding a material change in circumstances occurred warranting a change in Caleb's physical custody.

During oral argument before this court, the parties stated that an agreement had been reached in regard to where Caleb would attend school and it was no longer a contested issue. Therefore, the first assignment of error was withdrawn and we do not address it further.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012).

## ANALYSIS

Codi assigns that the trial court erred in finding a material change in circumstances occurred warranting a change in Caleb's physical custody. The court changed the physical custody of Caleb from primary custody with Codi to joint physical custody between Codi and Jeffrey, alternating on a weekly basis. The parties continued to have joint legal custody.

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.* The party seeking modification of child custody bears the burden of showing a change in circumstances. *Id.* Before custody may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child. *Id.* Importantly, the best interests of the child are paramount. *Steffy v. Steffy*, 287 Neb 529, 843 N.W.2d 655 (2014).

Jeffrey sought a modification of custody because he had concerns that Caleb was not getting sufficient and/or consistent treatment for his cystic fibrosis when he was in Codi's care. Caleb had cystic fibrosis at the time of the decree and still does. However, since the decree, Codi has remarried and her husband, rather than Codi, had been responsible for Caleb's morning medication regimen for about a year at the time of trial. Further, there were no other children involved at the time of the decree and now Codi and Charles have two small children who are also in Charles' care in the mornings.

Jeffrey presented evidence to show that Caleb may not always be getting the complete treatment regimen every morning, specifically in regard to the Smart Vest and the huff coughing, that there was a period of time where Codi was out of one medicine, and that one of Caleb's inhalers was lasting longer than it should if used as prescribed. However, Codi testified that the treatments administered by Charles were approved by the cystic fibrosis clinic and that she has always followed the clinic's recommendations and asked questions when she had them.

The trial court found Jeffrey's concern about Caleb's well-being under Codi's care valid due to her necessary reliance on Charles to make sure Caleb gets his treatment regimen every morning. The court further found: "While [Charles] appears to be making a genuine effort to care for Caleb, it is an incredible burden to place on a step-parent who is also tasked with caring for two other children, ages two years and two months."

Neither Codi nor Charles has been neglectful in their care of Caleb. However, Caleb's morning care, which includes his time-intensive treatment regimen, has changed from a parent to a non-parent. We agree with the trial court's determination that the change in who is overseeing Caleb's morning treatment regimen is a material change in circumstances. However, before custody may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). We consider that next.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) requires a court, in determining custody and parenting arrangements, to consider certain factors relevant to the best interests of the minor child, including in pertinent part: the relationship of the minor child to each parent prior to the commencement of the action, the desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; and the general health, welfare, and social behavior of the minor child. Additionally, a court may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the

emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag, supra.*

In the present case, there is no evidence of abuse or neglect by either parent, and both parents are fit. The evidence shows that Caleb enjoys spending time with both parents. Caleb also enjoys his relationship with his siblings and step-father. As the trial court found, taking Caleb out of his current home environment with Codi and his siblings and giving Jeffrey full custody may not be in Caleb's best interests emotionally. However, the court found that Jeffrey was more capable of attending to Caleb's physical care and health. Therefore, the court found that joint physical custody would be in Caleb's best interests.

Although under a joint custody arrangement Charles will most likely still be administering Caleb's morning treatment regimen during the weeks Codi has custody, it is in Caleb's best interests to have one of his parents overseeing the treatments 50 percent of the time. We find no abuse of discretion in the court's determination.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in modifying custody to joint physical custody. Accordingly, the order of the district court is affirmed.

AFFIRMED.